TOWN OF ARGOS *v.* HARLEY ET AL.

[No. 17,061. Filed June 25, 1943. Rehearing Denied October 12, 1943. Transfer Denied January 11, 1944.]

294

*Galeman Dexter,* of Plymouth, and *Roland Obenchain,* of South Bend, for appellant.

*Albert B. Chipman,* of Plymouth, and *Brubaker & Rockhill,* of Warsaw, for appellees.

CRUMPACKER, P. J.—Argos, Indiana, is an incorporated town of approximately 1,200 inhabitants located in Marshall County at the intersection of "Indiana U. S. Highway 31" and "State Road 10." Its

government rests largely in a Board of Trustees which, on the 29th day of May, 1940, consisted of Fred Helsel, Orval Tracy and Elda Sissel. Its main thoroughfare is known as Michigan Street which is an integral part of said "Indiana U. S. Highway 31" and courses in a slightly northwesterly and southeasterly direction through said town. Along the west side of Michigan Street and immediately south of "State Road 10" there are a number of store buildings, erected flush with the property line, in front of which a concrete sidewalk, approximately 15 feet wide, extends to the curb line. That part of the street used by vehicular traffic is paved with asphalt of a type commonly known as "blacktop." On May 29, 1940, and for a number of years prior thereto, Charles D. Alleman owned one of the store buildings above described in which one Arnold Boggs conducted a business known as the "Candy Kitchen." The building next on the south was occupied by Floyd E. Harley who operated a variety store on the first floor thereof and lived with his family, consisting of his wife and son Richard, immediately above. On said May 29, 1940, there was, and had been for two years immediately prior thereto, an iron pipe embedded in the sidewalk near the curb in front of the Alleman building. This pipe extended two or three inches above the surface of the sidewalk and on said day Richard Harley, then a boy of eight years of age, tripped over the same and fell to the sidewalk thereby severely fracturing both bones in his left arm near the wrist. By his father, Floyd E. Harley, as his next friend, he brought this suit to recover damages resulting from such accident and named as defendants the appellant Town of Argos, the appellee Charles D. Alleman, in front of whose premises said pipe was located, and Fred Helsel, Orval Tracy and Elda Sissel, as the Board of

Trustees of said town at the time of the accident, all of whom he charged with negligence in cutting off the metal pipe above described approximately three inches above the surface of the sidewalk, thereby creating a dangerous obstruction or defect in said sidewalk, which defect they permitted to remain for a long period of time without taking any precaution to protect pedestrians from its dangers. The record shows a court order abating the action as to the trustees concerning which no question is raised by this appeal. Trial was to a jury upon issues joined by an amended complaint and separate answers by the appellant Town of Argos and the appellee Charles D. Alleman. The verdict was for the appellee Richard D. Harley on his complaint against the Town of Argos in the sum of $2500 and against him on his complaint against Alleman. Judgment was entered accordingly and the Town of Argos brings this appeal relying upon a single assignment of error: "The trial court erred in overruling the appellant's motion for a new trial."

The appellant contends that the verdict of the jury is not sustained by sufficient evidence and is contrary to law because: (1) The uncontradicted evidence discloses that at the time of the accident in controversy Michigan Street was in the exclusive control of the Indiana State Highway Commission and the appellant, having no control over the street, owed the appellee Harley no duty in reference thereto; (2) the release of the appellee Alleman exonerated the appellant of all liability in connection with the accident; and (3) the evidence discloses as a matter of law that the appellee Harley's own negligence contributed to his injury.

The primary control of the public streets in a city or town in Indiana is vested in the state and any such

powers and control over the same as municipalities may have are only such as have been delegated to them. *Farmers' etc., Tel. Co.* v. *Boswell Tel. Co.* (1918), 187 Ind. 371, 119 N. E. 513; *Grand Trunk, etc., R. Co.* v. *City of South Bend* (1910), 174 Ind. 203, 89 N. E. 885, 36 L.R.A. (N.S.) 850; *City of Vincennes* v. *Vincennes Traction Co.* (1918), 187 Ind. 498, 120 N. E. 27; *State ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 85 N. E. 513. It naturally follows that the power of the state to delegate control over streets to the municipalities in which they lie necessarily carries with it the power to withdraw such control any time the state deems it to the interest of the public to do so.

Sec. 31, Clause 9 of the Cities and Towns Act of 1905 as amended provides as follows: "The board of town trustees shall have the following powers: . . . To lay out, open, change, pave and otherwise improve the streets, alleys, sewers, sidewalks and crossings of the town, and keep them in repair;" § 48-301, Burns' 1933, § 11358, Baldwin's 1934. Under this and other sections of the Cities and Towns Act of 1905, it has been held that municipalities have complete jurisdiction over all streets and public ways within their respective limits. *City of Bloomington* v. *Chicago, etc., R. Co.* (1913), 52 Ind. App. 510, 98 N. E. 188; *City of Hammond* v. *Jahnke* (1912), 178 Ind. 177, 99 N. E. 39.

The appellant contends, however, that at the time of the accident involved in this litigation the control of its sidewalks, delegated to the Town of Argos by the provisions of the above Act had been withdrawn by the state and vested exclusively in the Indiana State Highway Commission and that "Where there is no power to control there is no responsibility to repair, since the duty and its breach must concur to produce a right of

action." *The Board of Commissioners of Owen County* v. *Washington Township* (1890), 121 Ind. 379, 23 N. E. 257; *Gardner* v. *City of Covington* (1927), 86 Ind. App. 229, 156 N. E. 830. This contention is based primarily on § 36-116, Burns' 1933, § 8655 Baldwin's 1934, which provides as. follows: "If any state highway connects at the corporate limits of any town having a population of not to exceed thirty-five hundred (3500), as shown by the last preceding United States Census, with an improved street of such town, the State Highway Commission shall select, mark and maintain the same as a part of such state highway."

It is undisputed that long prior to the accident involved in this litigation "Indiana U. S. Highway 31" had been designated as a part of the state highway system and its control and maintenance assumed by the State Highway Commission under authority of the State Highway Commission Act of 1933. Acts 1933, ch. 18, p. 67. It is also unquestioned that when said "Indiana U. S. Highway 31" was taken over by said commission it connected at the appellant's corporate limits with the street upon which appellee Harley's accident occurred and that such street was then improved and the appellant was then an incorporated town of less than 3500 inhabitants.

A review of state highway legislation seems to indicate that the broad over-all purpose of the Legislature was to develop a general system of state highways to facilitate easy and safe communication between all parts of the State over roads built, improved and maintained by one authority in order that a long range master plan might be developed and carried into effect without interference by local units of government whose decisions and actions might not be in harmony therewith. That such a system could be

integrated with similar systems in other states was recognized by the United States Government through legislation granting federal aid in promotion of a nation-wide network of modern highways constructed for the safe and easy movement of people and freight between all parts of the country.

It also seems clear, in historical perspective, that the legislature intended all state highways, outside the limits of municipal corporations, to be in the absolute and exclusive control and jurisdiction of the State Highway Commission, while in cities and in towns of over 3500 inhabitants the matter of the control of streets which are a part of the state highway system seems to be divided between the commission and the municipality as provided by § 36-2902, Burns' 1933, (Supp.), § 8696-1, Baldwin's Supp. 1937, from which we quote as follows:

"Nothing in this section contained shall in any way annul, limit or abridge the right of any such city or town, either at its own expense or at the expense of property owners subject to assessment therefor, to improve the sidewalks and curbs along any such street forming the route of any such highway, and/or to construct sewers and drains therein, and/or to construct or maintain any portion of the roadway of such street not hereby required to be improved or maintained by said Commission. Such city or town shall provide adequate drainage for any such street. Excepting as herein expressly provided, nothing in this section contained shall in any way limit the right of any such city or town to regulate traffic, over any street therein, over which such highway is routed, or to relieve such city or town of any liability in reference thereto, now imposed upon it by law."

Within the limits of towns of less than 3500 people the extent of State Highway Commission control is not so clear, but it is obvious that a system of long distance

interurban communication, such as we have above de-scribed, would have little concern with pedestrian travel, and the construction, maintenance and repair of sidewalks for local use in small towns could have nothing more than an incidental or collateral bearing on the general purpose of state highway legislation, and this much seems certain—that unless the Legislature intended, by the use of the word "street" in § 36-116, Burns' 1933, § 8655 Baldwin's 1934, *supra,* to include the entire thoroughfare between property lines, the law gives no control over sidewalks in such towns to the State Highway Commission.

It should be remembered that nowhere in the entire gamut of State Highway Commission Acts from 1917 to 1941, and all acts amendatory and supplemental thereto, are the provisions of the Cities and Towns Act of 1905 defining the powers and duties of towns in reference to their streets specifically repealed. Only so much of that act as is in irreconcilable conflict with state highway legislation can be held to have been repealed by implication as that method of repeal is not looked upon with favor by the law. We are duty bound to give such construction to the State Highway Commission Acts here involved as will leave effective that part of all former law on the same subject not in conflict therewith. It has been held many times and in many jurisdictions that the word "street" as used in various statutes does not include sidewalks. Whether it does or does not depends entirely on legislative intention as determined by the rules of statutory construction where such intention, as expressed by statute, is ambiguous. *Town of Elma* v. *Carney* (1894), 9 Wash. 466, 37 P. 707; *Shady Avenue* (1907), 34 Pa. Sup. 327; *Board of Public Works* v. *Hayden* (1899), 13 Col. App. 36, 56 P. 201; *Challiss* v. *Parker,*

*Treasurer* (1873), 11 Kan. 384; *City To Use of Brooks* v. *Lea* (1872), 9 Phila. 106, 30 Leg. Int. 52; *Appeal of Ransom* (1914), 149 N.Y.S. 1056, 87 Misc. 1; *City of Mobile* v. *Harker* (1920), 204 Ala. 26, 85 S. 425; *Barry* v. *City of Cloverport* (1917), 175 Ky. 548, 194 S.W. 818; *Abbott* v. *Milwaukee* (1912), 148 Wis. 26, 134 N.W. 137; 40 Words and Phrases 277.

By restricting the meaning of the word "street" as used in § 36-116, Burns' 1933, § 8655, Baldwin's 1934, *supra*, to that portion of the thoroughfare devoted to the use of vehicular traffic, we believe that no violence will be done to the basic purpose of state highway legislation or no hindrance put in the way of the commission in the execution of such purpose. Such a construction will leave undisturbed that great body of the law, as laid down by our statutes and their judicial interpretation, pertaining to the powers of towns over their sidewalks and their liabilities to the public in reference thereto. Thus can the State Highway Commission Acts, in that particular at least, be reconciled with former statutes which they do not expressly repeal. See *Town of Brownsburg* v. *Trucksess* (1934), 98 Ind. App. 322, 185 N.E. 315. Such a construction will preserve and protect home rule over a matter purely local in character and in which the State at large has no interest. Responsibility will be placed where it logically belongs and where it has always been our theory of government to keep it. A duty will be imposed on local government that local government is best able to discharge to the interests of its citizens.

Appellant next contends that the verdict for the appellee Alleman and against it is inconsistent and therefore contrary to law. This proposition is predicated upon the legal assumption that the primary duty to

use reasonable care to keep the sidewalk in front of his premises reasonably safe for travel rests upon the appellee Alleman as the owner of the abutting property and the acquittal of Alleman of negligence in respect to such duty necessarily exonerates the appellant whose liability is merely secondary and derivative in nature. Appellant's categorical contention that the primary duty to keep the sidewalk in front of his premises in a reasonably safe condition for travel rests upon the abutting owner under all circumstances cannot be accepted as the law. As we have no statute imposing any such duty on the abutting owner, his duties and liabilities in respect thereto are determined by the common law. In an annotation to the case of *Cummings* v. *Henninger* (1925), 28 Ariz. 207, 236 P. 701, 41 A.L.R. 207, there is a collection of authorities on the subject which announce the rule as follows: "The general rule is that no common law duty rests upon the owner or occupant of premises abutting on a public street to keep the sidewalks in repair; consequently such an abutting owner is not liable for a defect in a sidewalk in front of his premises which he did not create." If, however, for his own purpose, use and convenience he creates such a defect, or through his own negligence, independent of that of the municipality, he creates a condition in the sidewalk which is dangerous to ordinary travel, he becomes primarily liable for any injury caused thereby. If the municipality has had timely notice, actual or constructive, of such defect it becomes secondarily liable, as between itself and the abutting owner, for any resulting injury to a traveler because of its failure to use ordinary care to keep its sidewalks reasonably safe for travel and, if required to respond in damages, it may recoup the same from the abutting owner as the original wrongdoer. If the

injured party sues the owner first and is unsuccessful he has lost his remedy against the municipality and if he joins the wrongdoers in one suit a verdict releasing the owner will exonerate the municipality. *The Town of Centerville* v. *Woods et al.* (1877), 57 Ind. 192; *McNaughton et al.* v. *City of Elkhart* (1882), 85 Ind. 384; *Wickwire et al.* v. *The Town of Angola* (1891), 4 Ind. App. 253, 30 N.E. 917; *City of Anderson* v. *Fleming* (1903), 160 Ind. 597, 67 N.E. 443; *Black* v. *City of Mishawaka* (1902), 30 Ind. App. 104, 65 N. E. 538; *Sipe* v. *City of Kokomo* (1920), 74 Ind. App. 365, 129 N. E. 61. These cases, and others to like effect cited by the appellant, all turn upon the fact that the defect involved was caused solely by the negligent acts of the owner of the abutting property and the municipality became liable only because, with notice, actual or constructive, it permitted the condition to remain.

Such however is not the case at bar. Although the appellee Alleman is alleged to have created the defect complained of, and there is evidence in the record that he did, it is not alleged, nor is there any proof, that he did so for his own use, purpose and convenience. His negligence in that regard was not independent of that of the appellant but on the contrary was joint and concurring therewith. Appellant and appellee Alleman were sued as joint tortfeasors and each, acting with the other, is charged with creating the defect in the sidewalk over which the appellee Harley tripped and fell. Each was sued for his own wrong and neither can complain that recovery was had against him and not against the other. *City of Gary* v. *Bontrager Const. Co.* (1943), 113 Ind. App. 151, 47 N. E. (2d) 182; *Lake Erie, etc., R. Co.* v. *Reed* (1914), 57 Ind. App. 65, 103 N. E. 127; *Childress* v. *Lake Erie, etc., R. Co.* (1914), 182 Ind. 251, 105 N. E.

467; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723; *Lewis et al.* v. *Guthrie* (1916), 63 Ind. App. 8, 113 N. E. 769; *Jackson* v. *Record, Admr.*, 211 Ind. 141, 5 N. E. (2d) 897; *Kniola et al.* v. *Kozlowski* (1921), 75 Ind. App. 2, 129 N. E. 489.

We are next asked to say that the record before us discloses contributory negligence on the part of the appellee Harley as a matter of law. Ordinarily that question is one of fact for the jury and it is only when the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men that the question becomes one of law for the court. *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 24 N. E. (2d) 284; *City of Michigan City* v. *Rudolph* (1938), 104 Ind. App. 643, 12 N. E. (2d) 970; *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. (2d) 714; *City of Gary* v. *Bontrager Const. Co.* (1943), 113 Ind. App. 151, 47 N. E. (2d) 182. We have examined the evidence with care and can find no undisputed facts upon which contributory negligence can possibly be predicated except the following: The appellee Harley, a boy eight years of age, was well acquainted with the sidewalk upon which he was injured and had seen the protruding pipe over which he fell many times before the accident. Just prior to and at the moment of his injury he was looking at the buildings abutting on the street and did not see the obstruction. He knew the protruding pipe was in the walk somewhere in the immediate vicinity although he gave it no thought at the time and did not know that it was immediately where he was about to step.

In a recent case this court said the following in reference to contributory negligence on the part of chil-

dren: "While due care, or ordinary care, is measured by the care that a person of reasonable prudence would ordinarily exercise under like circumstances, this is not true where the actor is a child . . . The care that must be exercised by a child is measured by the care that children of like age, knowledge, judgment and experience would ordinarily exercise under like conditions and circumstances." *Tabor* v. *Continental Baking Company* (1942), 110 Ind. App. 633, 38 N. E. (2d) 257. This is the rule universally announced by numerous decisions. See Restatement of the Law, Torts, Negligence, Sec. 283, p. 741, Comment: e. Children.

Applying this rule to the facts above set out, can it be said that the appellee Harley was guilty of contributory negligence as a matter of law? We think not. *City of East Chicago* v. *Gilbert* (1915), 59 Ind. App. 613, 108 N. E. 29, quotes with approval the following language from *Pyke* v. *Jamestown* (1906), 15 N. D. 137, 107 N. W. 359: "Where a pedestrian is injured as a consequence of a defect of which he had previous knowledge, the mere fact of previous knowledge does not *per se* establish contributory negligence. And this is also the rule where previous knowledge is coupled with absence of thought concerning the defect at the time of the injury, or a momentary forgetfulness of it. Previous knowledge of a defect and forgetfulness of it are important facts to be considered in connection with all other circumstances in determining whether the party injured was exercising reasonable care. But it is not negligence, as a matter of law, for a person who has knowledge of a defect not to remember it at all times and under all circumstances." This is in line with many decisions on the subject in this

state and elsewhere and it can be accepted as settled law that previous knowledge of a defect, in itself, does not charge one, if injured thereby, with contributory negligence as a matter of law. Evidence of such previous knowledge is competent and, in determining the question, should be considered by the jury along with other evidence on the subject. *City of Bluffton* v. *McAfee* (1899), 23 Ind. App. 112, 53 N. E. 1058; *City of Valparaiso* v. *Schwerdt* (1907), 40 Ind. App. 608, 82 N. E. 923; *Pittsburgh, etc., R. Co.* v. *Parish* (1902), 28 Ind. App. 189, 62 N. E. 514; *Lafayette Telephone Co.* v. *Cunningham* (1916), 63 Ind. App. 136, 114 N. E. 227; *Morrissey* v. *Cleveland, etc., R. Co.* (1916), 61 Ind. App. 90, 110 N. E. 105.

The appellant insists, however, that the undisputed evidence discloses that the defect in the sidewalk over which the appellee Harley fell was in plain view and he could have seen it had he looked. We are of the opinion that whether said appellee, in the exercise of ordinary care for his own safety, should have been looking at the sidewalk immediately prior to and at the time of the accident was a question for the jury to determine from all the facts and circumstances disclosed by the evidence. A pedestrian is not bound to keep his eyes constantly on the sidewalk. *City of Indianapolis* v. *Mitchell* (1901), 27 Ind. App. 589, 61 N. E. 947; *City of Bluffton* v. *McAfee, supra.* Nor is he required to make an active search for defects, *City of Valparaiso* v. *Schwerdt, supra,* or look for danger at every step. *Cummings* v. *Village of New Rochelle* (1899), 56 N.Y.S. 701. He is not negligent, as a matter of law, in failing to see a defect in plain view, *Barnes* v. *Town of Marcus* (1896), 96 Iowa 675, 65 N. W. 984, and especially is this true when his attention is diverted by some sufficient cause. *Collins* v. *Janes-*

*ville* (1903), 117 Wis. 415, 94 N. W. 309; *Graves* v. *City of Battle Creek* (1893), 95 Mich. 266, 54 N. W. 757, 19 L.R.A. 64; *City of Chicago* v. *Babcock* (1892), 143 Ill. 358, 32 N. E. 271; *Wood* v. *Boston* (1876), 121 Mass. 337.

Appellant complains of the trial court's refusal to direct a verdict in its favor at the close of all the evidence. The record discloses that a proper motion for that purpose was made but no written instruction to that effect was tendered to the court to be given to the jury. It has been held repeatedly that a peremptory instruction must be brought into the record by the same procedure as are other instructions and that the overruling of a motion for a directed verdict, unaccompanied by an appropriate instruction, presents no question on appeal. *Cook & Bernheimer Co.* v. *Hagedorn* (1925), 82 Ind. App. 444, 131 N. E. 788; *Smith, Admx.* v. *Cleveland, etc., R. Co.* (1918), 67 Ind. App. 397, 117 N. E. 534; *Raper* v. *American Tin-Plate Co.* (1901), 156 Ind. 323, 59 N. E. 937.

It is further argued that the court erred in refusing to give instruction 25 tendered by the appellant and in giving, over appellant's objections, the appellee Harley's instructions 2, 4 and 5. Appellant's instruction 25 is as follows: "If you find from the evidence that Michigan Street was on May 29, 1940, a part of that state highway known as U. S. Road 31, and that the Highway Commission of Indiana had prior to May 29, 1940, undertaken the maintenance of such street, your verdict must be for the defendant Town of Argos." As the word "street," as used in the State Highway Commission Acts, does not include the sidewalks in cities or towns, it is obvious this instruction is not applicable to the facts in the case, and the court properly refused,

it. Appellee Harley's instructions 2 and 5, given by the court, were objected to on the theory that they were not applicable in view of the undisputed evidence showing control of the sidewalk upon which said appellee was injured to have been then in the State Highway Commission. As we have heretofore indicated the State Highway Commission's control of Michigan Street extended to the roadway only and the appellant's duties in reference to its sidewalks remained undisturbed by the passage of the several State Highway Commission Acts. The instructions in question were appropriate to the evidence in the case and there was no error in their giving.

Appellee Harley's instruction 4, as given by the court, reads as follows: "A person traveling upon a sidewalk has a right to assume, in the absence of notice to the contrary, that it is in a reasonably safe condition for public travel." The objection to this instruction is that it states a principle of law entirely inapplicable to the facts of the case as the undisputed evidence discloses that the appellee Harley had knowledge of the defect in the appellant's sidewalk long before he tripped and fell over the same. Although stating a correct principle of law this instruction should not have been given for the reasons above indicated. However, at the request of the appellant, the court further instructed the jury as follows: "If you find from the evidence that the plaintiff Richard D. Harley, prior to his injuries, knew of the existence of the pipe in question and thereafter failed to exercise such care in avoiding such pipe as is commensurate with his capacity to appreciate and avoid danger, then your verdict must be for the defendant town." In view of this instruction it is difficult to see how the jury could have been misled in any way

by the instruction complained of. We hold, therefore, that any error the trial court may have committed in giving appellee Harley's instruction 4 was harmless.

Appellant's instructions 15, 16 and 18, refused by the court, have to do with the duty of a town in reference to its sidewalks, the manner in which they are intended to be used, and the non-liability of municipalities for accidents due to situations and occurrences not reasonably to be anticipated. The jury was fully and correctly informed concerning these matters by instructions 11, 12 and 19, given at the request of the appellant and instruction 2, given at the request of the appellee Harley.

The remaining questions presented by this appeal involve the admission of alleged incompetent evidence and the exclusion of testimony the appellant contends was proper. During the progress of the trial the appellant sought to prove by the testimony of Fred Helsel, a member of its Board of Trustees, that after the State Highway Commission assumed control of the street in question the appellant performed no work thereon or made no repairs thereto except upon written permit issued by the commission. The law vested control of its sidewalks in the appellant and imposed upon it the responsibilities incident to such control. These duties the appellant could not delegate to another agency of the state and thereby escape responsibility for a failure to perform them. *City of Evansville* v. *Behme* (1912), 49 Ind. App. 448, 97 N. E. 565. We are of the opinion that the proffered evidence was incompetent for the reasons indicated and there was no error in its exclusion.

Over the appellant's objection the trial court permitted the witnesses Boggs and Davis to testify that

several hours after appellee Harley's injury, the iron pipe in question was driven into the sidewalk by Boggs in the presence and at the direction of the president of the appellant's Board of Trustees and also, over appellant's objections, admitted two photographs of said sidewalk at the place of the accident taken twelve days after the occurrence in suit. Consideration of this evidence was restricted by the court to a single purpose by instruction 27 given at the appellant's request. The pertinent part thereof is as follows: "This evidence was admitted on the single question of whether the defendant admitted responsibility for the maintenance of the sidewalk in question. It cannot therefore be considered by you on the question of whether the town was in any respect negligent." It has been held that "evidence of subsequent repairs, when restricted by a proper instruction, is proper for the purpose of showing a city's recognition of a defective walk as one which the city was bound to repair." *City of Jeffersonville* v. *McHenry* (1899), 22 Ind. App. 10, 53 N. E. 183. To the same effect is *City of Lafayette* v. *Weaver* (1884), 92 Ind. 477. We find no reversible error in the admission of this evidence.

The major question presented by this appeal concerns the control of the appellant's sidewalk and responsibility for its condition. We have decided that such control and such responsibility rested exclusively with the appellant at the time the appellee Harley was injured and upon that theory we are of the opinion that the case was fairly tried, a correct result reached and substantial justice done.

Judgment affirmed.

NOTE—Reported in 49 N. E. (2d) 552.