## Eisenschmidt v. Ader.

(Decided October 7, 1919.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Construction of Sidewalks.—Under the present statutes governing the construction and reconstruction of sidewalks, in towns of the sixth class, the board of trustees, having full power to construct or reconstruct them, at the expense of the town, or at that of the owners of the abutting property, may do so, by ordinance or resolution, and under such requirements, as it may prescribe, which are not arbitrary nor oppressive to the citizen, nor deny to him a fair opportunity to preserve his right.

2. Municipal Corporations—Construction of Sidewalks.—The ordering of the construction or reconstruction of a sidewalk in a town of the sixth class, and the prescribing of the specifications, as to materials, and dimensions and grade of the sidewalk, are matters which are legislative in their character, and can not be delegated by the trustees to any other agency.

WM. U. WARREN for appellant.

L. G. CRAWFORD, JR. for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Fort Thomas is a town of the sixth class, and the power of the board of trustees to construct, or cause to be constructed, improvements upon the streets, is controlled and governed by the statutes, which constitute what is ordinarily designated as the charter of towns of that class. The greater number of authorities cited by counsel in their briefs as well as the greater number of adjudications of this court upon subjects kindred to that in controversy, have very little bearing upon or relation to the issues arising in this action. Most of the adjudications of this court upon subjects kindred to that in controversy, here, are with reference to the charters of towns of a different class from that of Fort Thomas, or

else, rendered under statutes governing towns of the sixth class, which were very different in their terms and requirements to the statutes now governing the subject. The appellee, Frank G. Ader, instituted this action to enforce an alleged lien in his favor against the property of the appellant, who is a resident of Fort Thomas, to pay for the reconstruction of a sidewalk on Indiana avenue, in that town, abutting his property. The record consists of the petition and an amended petition, and the answer of appellant together with demurrers to both the petition and the answer. To the petition as amended, the court overruled a general demurrer, but, to the answer of appellant, a demurrer was sustained, and the appellant declining to plead further, a judgment was rendered enforcing the lien, claimed upon his property, and adjudging a sale of it to satisfy the lien. The facts, as stated by the petition and its amended petition, are substantially as follows:

On December 18, 1914, the board of trustees adopted an ordinance, which is styled, ''An ordinance providing for construction, reconstruction and maintenance of sidewalks in the town of Fort Thomas, Kentucky;'' and providing penalties for its violation. Section 1 of the ordinance, is as follows:

''That, hereafter, all sidewalks made within the town of Fort Thomas, whether original or reconstructed, shall be constructed of 'artificial stone,' as provided in section 4 hereof.''

Section 2 of the ordinance, is as follows:

''It is hereby made the duty of each and every person owning lots or real estate fronting and abutting upon any public street, or thoroughfare of this town which shall be ordered to be improved by sidewalks, to, at once, construct and thereafter maintain in a suitable state of repair a sidewalk or pavement along by, and in front of his, or her, or their said lots or property, whenever and so far as the same so fronts or abuts upon said public street.''

Section number 3, provides as follows:

''No sidewalk, now constructed, shall be subject to the provisions of this ordinance until the same shall have been inspected and condemned by the road and sidewalks committee and town engineer.''

Section number 4, is as follows:

"Unless otherwise ordered by a resolution of the board of trustees all sidewalks constructed or reconstructed as herein provided, shall be made four feet in width, and the center, of said improved sidewalks, the midway between the property and curb lines thereof, the grade, in all cases, to be fixed by the town engineer."

Section number 5, is as follows:

"All sidewalks shall be constructed in conformity with the following specifications." Then there follows in subsections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13, a minute description of the materials to be used, and entire manner of its construction together with dimensions in every particular.

Subsection 14 of section 5, provides as follows:

"Grade of sidewalks. In full width sidewalks, the pavement will begin three-fourths of an inch above the grade of the curb, and rise at the rate of three-eights of an inch, to one foot, to the property line. The alignment and slope of all pavements, less than full width of the sidewalk, will be subject to a special direction of the town engineer."

Section 6 of the ordinance, is as follows:

"Any and all sidewalks not improved as provided in this ordinance, within thirty days from, and after the passage of a resolution, ordering the same, may be done by the town in such manner as it sees fit, and the cost thereof, shall be charged to, and held a lien against the abutting property in front of, or about which said improvement has been made."

On May 7, 1917, the committee on roads and sidewalks, and the engineer of the town, by a written report to the board of trustees, condemned the cinder path or sidewalk, at that time existing, which abutted on the property of the appellant, and recommended, that a "cement sidewalk" should be constructed there.

It seems to be conceded, that the term, "cement sidewalk" describes the character of sidewalk, provided for, in the general ordinance of December 18, 1914, and no complaint is made by the appellant of it being other than the same character of sidewalk.

The report of the road and sidewalks committee and engineer, was adopted on the date of the report, and a

resolution of the board of trustees, for which four members of the board voted, was adopted, which required the appellant to construct the sidewalk in front of his property in accordance with the requirements of the general ordinance, heretofore mentioned. The resolution, also, directed the clerk of the board of trustees, to give a written notice to the appellant, of the actions of the board, which he did, by giving, to him, a written notice of the action of the board, and enclosing to him with it, a copy of the ordinance number 5, when the appellant, before the fourth day of June, 1917, notified the board, that he would refuse to comply with its order and construct the sidewalk.

Thereafter, on June 4, 1917, the board of trustees, by a resolution adopted by the affirmative votes of all of its members, instructed its road committee to secure bids for the construction of the sidewalk, and to have the same constructed, and, thereafter the road committee, after due advertisement for the bids, entered into a contract with the appellee for the reconstruction of the sidewalk, and in accordance with this contract, the appellee built the sidewalk in accordance with the specifications and requirements of the general ordinance upon the subject. On June 16, 1917, the board of trustees, four members being present, and all voting affirmatively, adopted an ordinance, by which the board ratified the actions of the road committee and approved the contract, made with the appellee, accepted the sidewalk as having been completed in accordance with the contract, and with the general ordinance, and directed a warrant to issue in favor of the appellee for the sum of $140.00, which was the contract price for the building of the sidewalk and, in accordance with this ordinance, a warrant was issued and delivered to the appellee, for the sum named, against the real estate of appellant upon which the sidewalk abutted. The appellee, in his amended petition, alleged that prior to the year, 1917, the grade of the sidewalk had been fixed by an ordinance of the board of trustees of the District of Highlands, by which name, the taxing district, thereafter, constituting the town of Fort Thomas, was then called, and that at the time the appellant was ordered to reconstruct the sidewalk, its grade had already been established and fixed.

The appellant, by his answer, alleged, that no lien existed against his property, because of the fact, that the sidewalk was reconstructed without any ordinance having been adopted requiring the same to be done, and that the board of trustees did not advertise for bids, nor enter into any contract for the building of the sidewalk; nor require any bond of the contractor for a faithful performance of his duty, when the cost of the improvement exceeded $100.00; that the board of trustees was without authority to delegate the duty of fixing the grade of the proposed improvement to the town engineer, and that, its direction to the road and sidewalks committee, contained no specifications for the building of the improvement, and the same was done by such committee, and without authority on the part of the board of trustees to delegate to it such powers; he denied, that he had notified the board of trustees, that he would not build the sidewalk, and he further denied, that the grade of the street upon which the walk was built, had been fixed and established by the board of trustees of the district, or at all.

The contention, that a lien does not exist upon appellant's property, because a formal ordinance was not adopted by the board of trustees, applying to the specific improvement ordered, is not tenable. Of course, it is elementary, that the right to a lien upon the property of the abutting owner is not a common law right, and is a creation of the statute, and if the requirements of the statute are not substantially complied with by the board of trustees, in providing for the improvement, the lien fails, and there is no departure on our part from this doctrine. The question then to be determined is, what power the statute, relating to towns of the sixth class, gives to the board of trustees in the premises, and what requirements are imposed upon it, in the proceedings, necessary to create the lien. The statutes relating to the subject, and which apply to towns of the sixth class, are as follows:

Section 3706, Ky. Stats. "The board of trustees is hereby authorized and empowered to order any work, they deem necessary to be done upon the sidewalks, curbing, sewers, streets, avenues, highways and public places of such towns. The costs and expenses incurred in repairing streets, avenues, highways, sewers, and public places, shall be paid out of the general fund of the town.

The expenses, incurred in making and repairing sidewalks and curbing, shall be paid by the owners of the land fronting and abutting thereon, if the board of trustees so order, each lot or portion of lot being separately assessed for the full value thereof, in proportion to the frontage thereof to the entire length of the whole improvement, not to exceed a square sufficient to cover the total expenses of the work. The cost and expenses incurred in constructing or reconstructing sidewalks, curbing, streets, avenues, highways, sewers, and public places, shall be paid out of the general fund of the town or by the owners of the lands, fronting and abutting thereon, as the board of trustees may in each case determine; but the local assessment shall not exceed fifty per centum of the value of the ground after such improvement is made excluding the value of the buildings and other improvements upon the property so improved.''

"Whenever the board of trustees shall determine upon the construction or reconstruction of streets, avenues, highways, sewers and public places at the expense of the abutting property, they shall cause the same to be done, as follows:

"The ordering of such improvement shall be, by ordinance of the board of trustees and the contract therefor, awarded to the lowest and best bidder after proper advertisement for bids. The said board of trustees shall require the accepted bidder to execute a bond to the town with good and sufficient security to be approved by said board of trustees for the faithful performance of his contract."

It is provided in the remainder of this section, that the board of trustees may require the improvements above mentioned, to be made at the costs of the abutting property owners upon the petition of a majority of the abutting owners, or without such petition, at a regular meeting by the affirmative vote of four members of the board.

Section 3707, Ky. Stats., provides, as follows:

"Improvement and repair of public property—When done by contract. In the erection, improvement and repair of all public buildings and works, in all streets and sewer work, and in all work in and about streams, bays, or water fronts, or in or about embankments or other

works for protection against overflow, and in furnishing any supplies or materials for the same, when the expenditure, required for the same, exceeds the sum of one hundred dollars, the same shall be done by contract and shall be let to the lowest responsible bidder, after due notice, under such regulations as may be prescribed by ordinance.''

These statutes are somewhat confusing, but it will be observed, that they make a distinction between what is included, when the terms, ''streets, avenues, highways, sewers and public places'' are used, and when the terms, ''sidewalks and curbing'' are used. Although in the second paragraph of section 3706, *supra,* the terms, ''sidewalks, curbing, streets, avenues, highways, sewers and public places'' are all used, the fact that the terms ''sidewalks and curbing'' are specifically named, indicates, that they are not the same as meant, nor intended to be included, in the term, ''public places.'' In the first paragraph of the statute, *supra,* a clear distinction is made when it empowers the board of trustees to ''order any work, they may deem necessary to be done upon the sidewalks, curbing, sewers, streets, avenues, highways and public places,'' and follows this with the provision, that the costs of ''repairing streets, avenues, highways, sewers and public places,'' should be paid out of the general funds of the town, and follows this immediately with a provision, that the expenses, incurred in making ''sidewalks and curbing,'' should be paid by the owners of the abutting property, if the trustees should so elect. This makes it plain, that the legislature did not intend to include ''sidewalks and curbing,'' in the term, ''public places.'' The second paragraph of the statute, authorizes the trustees to require the owners of abutting property to pay the expenses of constructing or reconstructing sidewalks, curbing, streets, avenues, highways, sewers, and public places, if they elect to do so, but, the above mentioned distinction is again clearly made, when the statute defines the manner in which the construction and reconstruction of ''streets, avenues, highways, sewers and public places'' shall be made at the expense of the abutting property owner. It declares that the ordering of the work to be done, shall be by an ordinance, and that the contract shall be let to the lowest and best

bidder after proper advertisement for bids, and the contractor shall be required to execute a bond for the faithful performance of his contract. Hence, it will be observed, that the construction or reconstruction of sidewalks, is not subject to the above provisions, which make necessary a formal ordinance, as provided by section 3700, Ky. Stats., the letting of a contract to the lowest and best bidder, after due advertisement for bids, and the execution of a bond by the contractor. Neither does section 3707, *supra,* which requires, in the erection, improvement or repair of certain characters of works, therein mentioned, and when the expenditure exceeds one hundred dollars, that, it shall be done by contract, and let to the lowest responsible bidder, after due notice, and under regulations prescribed by ordinance. For the same reasons heretofore given, this section of the statute, does not have reference to the construction or reconstruction of a sidewalk. The construction placed upon the foregoing statutes, to the effect, that the legislature intended to deal with improvements to streets, avenues, highways, sewers, and public places, differently from improvements in the way of sidewalks, is in accordance with the construction placed upon statutes, somewhat similar in their terms to the statutes here considered in Barry v. City of Cloverport, 175 Ky. 548, and Tennessee Paving Brick Co. v. Barker, 22 R. 1069. Hence, it would seem, that the statute, having empowered the trustees of towns of the sixth class to have done ''any work, they deem necessary upon the sidewalks, etc.,'' they may proceed to have work done upon sidewalks, at the expense of the abutting property owner, in such manner, as may appear to be proper, in their discretion, and under such reasonable regulations, as they may adopt by ordinance or resolutions, provided, the manner and details of such requirements, are not arbitrary nor oppressive to the citizen, nor deny to him a fair opportunity to preserve his rights. There is a dictum in Town of Walton v. Diers, 173 Ky. 323, which read alone, would indicate a contrary doctrine, to the effect, that the statute specificially prescribes the method to be pursued, when it is determined that the cost of construction of a sidewalk, shall be at the expense of the abutting property owner, but, when this is read with the remainder of the opinion, it will be observed, that the court was then considering the question as to the number

of trustees, voting affirmatively, who were necessary to make a valid order to require the costs of sidewalk construction to be paid by the owners of abutting property, and the questions, here determined, were not existent in the case. Hence, the fact, that in the instant case, the work was not ordered to be done by a formal ordinance, but by resolution, and the person, who did the work, was not required to execute a bond for the faithful performance of his contract, was not fatal to the lien, claimed for the work.

The contentions, that the trustees did not prescribe the details, and specifications of the sidewalk, including the grade, and did not direct its sidewalk committee to advertise for bids to do the work, and could not delegate to the committee nor to its engineer the power to prescribe the specifications nor the grade, and for such reason the lien failed, does not, under the facts of this case, present a good defense to the action. The ordaining of the specifications of a sidewalk improvement as well as the grade, are legislative in their character, and such things, the board of trustees must fix, by ordinance or resolution, and it can not delegate the authority to do these things to any one. Hardinsburg v. Mercer, 172 Ky. 661; Goose v. Joyes, 4 Bush 468; Zable v. Louisville Baptist Home, 92 Ky. 94. This will not be disputed.

However, the general ordinance upon the subject of sidewalks adopted on December 8, 1914, fixes the specifications as to materials and manner of the construction of all sidewalks, to be constructed or reconstructed in the town, and prescribed their width, except, when by resolution, they were ordered to be made of a different width, and also, fixed their grades when the sidewalk was to be the full width of four feet, and when it was the reconstruction of a sidewalk, as in this case.

It appears, from the report of the sidewalks committee, that a sidewalk, made of cinders, was already in existence, at the place where appellant was ordered to construct a sidewalk. In such state of case, the fourth and sixth sections of the ordinance being construed together, the grade of the new sidewalk is fixed by the curbing, which then existed at that point. The resolution, requiring appellant to construct a sidewalk, did not provide, that it should be of less width than is required by the general ordinance, which is four feet, and hence, the resolution,

requiring him to reconstruct the sidewalk the length of his property in accordance with the requirements of the general ordinance, contained full specifications as to width, length and materials, and being where a sidewalk of cinders already existed, its grade was fixed by the curbing, then existing, and the town engineer was necessarily precluded from any power to fix the grade. In its order, to the sidewalks committee, to receive bids for the work and to have the work done, no authority was delegated to the engineer of any kind, and it does not appear, that he had anything to do with the work. True, the resolution does not contain any specifications of the work to be done, but there being already in existence, a general ordinance which prescribes the specifications for the sidewalk thereafter to be constructed, unless ordered to be done in a different way by the board of trustees, it must be assumed that the order to the sidewalk committee, was an authority to them to have the sidewalk reconstructed in accordance with the specifications of sidewalks, which was already a law, and applying to all sidewalks to be thereafter built. The resolution does not direct the committee to advertise for bids, and neither does the statute require such advertisement as applying to the construction or reconstruction of sidewalks, but the committee did so, and of this, the appellant surely can not complain.

The contract to reconstruct the sidewalk, to be a contract of the town, must necessarily have been made by the board of trustees, but, this did not preclude the board from having its committee, on sidewalks, to do for it such ministerial duties, as receiving bids and superintending the work, but, the contracts, if any were made, should be made by the board of trustees, and it should keep the whole matter, within its control, but, a contract, which was made by the committee, under a mistake of its power to do so, would not be void, on that account, if thereafter the bid was reported to the board and was accepted, and the contract entered into by the board itself. The board of trustees having full power to require the work to be done, at the cost of the abutting property owner and to enter into a contract to have the work done, and the proceedings, under which the contract was made, not being invalid, the board of trustees had the power to ratify it and to make it the contract of the town.

As said in Nickles v. Frankfort, 33 R. 919: "Ratification, in its essence, presupposes something done, but, incomplete or invalid for want of sufficient authority. It is therefore no argument against the power of ratification to say that the thing ratified had been done."

The judgment is therefore affirmed.